IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DOMONIC T. COMBS, JR., #446652, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | Case No. 21-cv-0071-JPG |
| ) | |
| SHERI McLEOD, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Now before the Court is the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Defendant Sheri McLeod. (Doc. 32). McLeod argues that Plaintiff Combs failed to follow the established grievance procedure at the St. Clair County Jail ("Jail") before filing this action and seeks dismissal of this case. Combs opposes the motion. (Doc. 35). McLeod filed a reply. (Doc. 37).

On August 18, 2022, the Court held an evidentiary hearing on the motion consistent with *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008). Pursuant to Federal Rule of Civil Procedure 42(a)(1), the Court consolidated this case with three other civil rights actions for the limited purpose of the *Pavey* hearing (Doc. 42): *Brown v. Watson, et al.*, No. 21-cv-138-JPG (S.D. Ill. 2021) (Docs. 70, 74, and 77); *Hollins v. Watson, et al.*, No. 21-cv-161-JPG (S.D. Ill. 2021) (Docs. 46, 48, and 52); and *Good v. Marcowitz, et al.*, No. 21-cv-1249-JPG (S.D. Ill. 2021) (Doc. 31). Like this case, the other cases involve St. Clair County Jail inmates, the same grievance procedure, and the same or similar defendants and claims.

At the consolidated *Pavey* hearing, Defendants presented the testimony of Jail

Superintendent Shan Collins,[1] and Plaintiffs had an opportunity to cross-examine him. The Court then took the matter under advisement. For the reasons explained in more detail below, the Court finds that St. Clair County Jail's grievance procedure, as written during the relevant time period, was so confusing that it was incapable of use. The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e, requires prisoners to exhaust available remedies before bringing suit. Administrative remedies based on St. Clair County Jail's grievance procedure, in effect during the relevant time period, were unknowable and consequently unavailable to Combs. Accordingly, the motion for summary judgment will be **DENIED**.

## BACKGROUND

Combs filed this action on January 19, 2021; his original Complaint was dismissed without prejudice for failure to state a claim. (Doc. 7). His First Amended Complaint (Doc. 13) alleges that Combs fractured a tooth in January 2020. He submitted numerous sick call slips seeking treatment for severe dental pain, and obtained pain medication and antibiotics in April 2020. On November 1, 2020, Combs submitted another sick call slip and met with Defendant McLeod (a med tech) as a result. She informed Combs he would be placed on the waiting list for tooth extraction, but she did not put him on the list and Combs was never given any treatment for the tooth.

Following the required screening, Combs was allowed to proceed on the following claim against Defendant McLeod:

**Count 1:** Fourteenth Amendment claim against Defendants for denying Plaintiff adequate dental care at the Jail for a tooth that broke in January 2020.

(Doc. 14, pp. 2-4). The three other Defendants (Dr. Marcowitz, Richard Watson, and Wexford

---

[1] Shan Collins identified himself as the St. Clair County Jail Captain and Assistant Jail Superintendent. For ease of reference, the Court will refer to him as "Captain Collins."

Health Sources) were dismissed from the action without prejudice. (Doc. 14, pp. 2-4; Doc. 26, p. 6).[2]

McLeod's motion asserts that Combs submitted a "Captains Request" form[3] on November 1, 2020, complaining that he told McLeod (identified in the document as "Ms. Sherri") that ibuprofen was not relieving his tooth pain. (Doc. 33, p. 3; Doc. 33-1, p. 26). He had been told he was on the waiting list to get the tooth pulled, but he had been waiting for treatment for over six months. *Id.* The Grievance Officer responded to Combs' November 1 Request, writing that his complaint was forwarded to medical that date. *Id.* A November 6, 2020, note on that form reflected that Combs was given a dental form which was returned and would be faxed for authorization. *Id*.

McLeod states that Combs filed a second "Captains Request" form on November 26, 2020, over his worsening tooth pain and delay in treatment. (Doc. 33, p. 3; Doc. 33-1, p. 27). He had been given medication that made him feel nauseated, lightheaded, dizzy, and drowsy. *Id.* The responding nurse wrote that Combs had been seen in medical on November 2, 2020, was given ibuprofen, and was on the list to see the dentist. (Doc. 33, p. 4, Doc. 33-1, p. 27).

Combs filed a "Detainee Grievance Form" on December 8, 2020 regarding the November 26, 2020 incident. (Doc. 33, p. 4; Doc. 33-1, p. 15).[4] McLeod asserts this was not sufficient to exhaust his claim against her because it did not refer to her and addressed only the matter of the medication he was given on November 26 by a different med tech. McLeod further asserts Combs never filed a detainee grievance corresponding to the November 1 Captains Request complaining

---

[2] Combs never submitted a motion for leave to amend his Complaint to re-plead his claims against the dismissed Defendants. (*See* Doc. 26, p. 3).

[3] The forms used by Combs bear the title of "St. Clair County Sheriff's Department Request-Complaint Form." (Doc. 33-1, pp. 26-27). This form is variously referred to in the Jail's grievance procedure as the "Complaint/Request Form" and the "Captains request." (Doc. 33-2, p. 20).

[4] Combs submits a copy of his Detainee Grievance Form, dated December 8, 2020, which references an occurrence on November 26, 2020. (Doc 35, p. 10). This is a more legible copy of the same exhibit attached to Defendant's memo at Doc. 33-1, p. 15).

of McLeod's conduct. (Doc. 33, p. 4). And finally, McLeod claims that Combs' grievance file "does not contain a written summary of the November 26 Grievance, or any other grievance, to the Assistant Jail Superintendent or any final review by the Jail Superintendent as required by the grievance policy." (Doc. 33, p. 4; Doc. 33-2).

Combs responds that when he received his November 1, 2020, complaint form back, he was not satisfied so he submitted a Grievance Form the same day to Sgt. Boujack. (Doc. 35, p. 3). He waited for weeks to get a response, but it never came. He continued to seek medical attention for the tooth. He asserts that he therefore exhausted his available administrative remedies before filing suit. (Doc. 35, p. 5).

McLeod replies that Combs' claim to have filed a Grievance Request after the November 1, 2020 Captains Request was returned to him is self-serving and has no evidentiary support in the record, so it should be disregarded. (Doc. 37).

## APPLICABLE LEGAL STANDARDS

**A.     The Prison Litigation Reform Act**

Lawsuits filed by pretrial detainees and convicted persons, alike, are governed by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). The PLRA states, in no uncertain terms, that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion of available administrative remedies is a precondition to suit, and the Supreme Court has interpreted the PLRA to require "proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 84 (2006); *Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir. 2004). This means "using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

*Woodford*, 548 U.S. at 90 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).

To properly exhaust, an inmate must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo*, 286 F.3d at 1025. Strict compliance with the Jail's grievance process is required. *Locket v. Bonson*, 937 F.3d 1016, 1025 (7th Cir. 2019); *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993) (Courts are "not free to rewrite the statutory text" when Congress has strictly "bar[red] claimants from bringing suit in federal court until they have exhausted their administrative remedies."). Failure to properly exhaust all available remedies before filing suit is grounds for dismissal of the lawsuit. *Pavey v. Conley*, 544 F.3d 739, 741 (7th Cir. 2008) ("Until the issue of exhaustion is resolved, the Court cannot know whether it is to decide the case or the prison authorities are to.").

The purpose of the PLRA's exhaustion requirement is to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford*, 548 U.S. at 93; *Perez*, 182 F.3d at 537 (exhaustion serves purposes of "narrow[ing] a dispute [and] avoid[ing] the need for litigation."). The requirement allows the Jail's administration an opportunity to fix the problem and mitigate the damage to a plaintiff. *Pozo*, 286 F.3d at 1023-24. Allowing otherwise would frustrate the purpose of the grievance process. *Porter v. Nussle*, 534 U.S. 516, 526 (2002). On the issue of exhaustion, defendants have the burden of proof. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

**B.     Summary Judgment**

Summary judgment is appropriate only if the moving party can show "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the burden of establishing that no material facts are genuinely disputed. *Lawrence v. Kenosha Cty.*, 391 F.3d

837, 841 (7th Cir. 2004). Any doubt about the existence of a genuine issue must be resolved in favor of the nonmoving party. *Id*.

The district court's role on summary judgment is generally not to weigh evidence or judge witness credibility. When deciding a motion for summary judgment on exhaustion, however, the Seventh Circuit explains that a different standard applies. *Pavey*, 544 F.3d at 739-41. The court decides contested issues regarding exhaustion and makes limited findings of fact. *Id*. at 740-41. "[D]ebatable factual issues relating to the defense of failure to exhaust administrative remedies" are decided by the judge and not a jury. *Id*.

**C.     Jail Grievance Procedure**

The St. Clair County Jail Grievance Procedure that was in effect during the relevant time period (*i.e.*, late 2020 and early 2021) states:

### GRIEVANCE PROCEDURE

Superintendents Call

Superintendent's call is a time set aside for handling complaints that cannot be handled through normal channels. **(Ask for Complaint / Request Form)** In order to see the Superintendent regarding such a matter, you must submit a request in writing. Request forms are available and may be obtained from any officer on duty. Complete the requested information on the form and return it to the block officer. Your request will be forwarded through the proper channels. Your request will be screened and if it is something that can be handled by the officer or Sergeant on duty they will do it. For matters in which they cannot be handled, you will be called out at a time to speak with the Jail Superintendent or his designate.

Step 1. A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it. The immediate supervisor shall provide a written response to the grieving detainee within 3 days after receiving the grievance. The original will be forwarded to the Jail Superintendent.

Step 2. If the grievance is not resolved to the detainee's satisfaction, the detainee may submit the grievance to the Assistant Jail Superintendent by summarizing the grievance in writing within forty eight (48) hours through the on duty shift

supervisor. The grievance must be submitted to the Jail Superintendent within 3 days (not including weekends and holidays) of the decision of the Assistant Superintendent. The Jail Superintendent will review the response(s) and approve/disapprove them; if he disapproves them, he will take the necessary action to revise the previous response(s) according to the St. Clair County Jail Policies and Procedures Manual or to his professional opinion in a fair and impartial manner and return to the detainee within three (3) duty days. This shall constitute the final resolution of the grievance.

Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captains request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the Jail Superintendent needs to be notified.

(Doc. 33-2, p. 11; Global Exhibit 1, pp. 20-21) (emphasis in original).[5]

## ANALYSIS

St. Clair County Jail's Grievance Procedure suffers from numerous problems. These issues include its overall structure, poor organization, omission of deadlines, lack of clarity, inconsistent use of terminology, and inconsistent real world application. A plain reading of the grievance procedure reveals these flaws, which are underscored by the defendants' witness testimony.

**A.      Overall Structure**

The structure of the grievance procedure is confusing. Below the heading, "GRIEVANCE PROCEDURE," are four paragraphs containing instructions for filing complaints at the Jail. These paragraphs are arranged in the following order: (1) Superintendent's Call; (2) Step 1; (3) Step 2; and (4) Note.

The first paragraph addresses Superintendent's Call. However, Superintendent's Call isn't part of the grievance process at all, according to McLeod and Captain Collins. McLeod's motion omits this paragraph entirely from her description of the Jail's grievance procedure. (Doc. 33, p.

---

[5] During the evidentiary hearing of August 18, 2022, the Grievance Procedure was admitted and referenced as "Global Exhibit 1."

7). Captain Collins testified that Superintendent's Call is the step of last resort. When the grievance procedure does not resolve the inmate's issue, this step offers one final avenue to relief. Because the step isn't part of the grievance process, it does not belong under the heading "GRIEVANCE PROCEDURE." Even so, it occupies the entire first paragraph.

McLeod's motion points to the second and third paragraphs, entitled "Step 1" and "Step 2," as describing the actual grievance procedure. (Doc. 33, pp. 7). Step 1 instructs an inmate to file a grievance with his or her shift supervisor. Step 2 instructs the inmate to forward any unresolved grievance to the assistant jail superintendent and, if still unresolved, on to the jail superintendent for final resolution. If Step 1 and Step 2 represent the Jail's entire grievance procedure, then these two paragraphs should not be buried in the middle of a four-paragraph document. The two paragraphs describing Step 1 and Step 2 should stand alone under the heading, "GRIEVANCE PROCEDURE."

The fourth paragraph contains the actual first step of the process, according to McLeod. (Doc. 33, p. 8). It includes the following instruction: "A Captains (sic) request must be submitted prior to the grievance procedure." If this is the very first step an inmate must take to address a complaint, before resorting to the grievance steps, then this instruction does not belong in the final paragraph of the procedure; it belongs at the beginning of the procedure.

At the *Pavey* hearing, Captain Collins testified that the grievance procedure is a two-steps process. The first step is to submit a written captain's request/complaint. If the problem is not resolved, the second step is to file a written grievance. Again, the "first step" Collins describes is buried in the fourth paragraph of the written policy, and the "second step" is contained in "Step 1" of the policy. As Collins acknowledged, confusion abounds.

If arranged in order of the steps an inmate must take to address a complaint, the procedure

would consist of Paragraph 4, Paragraph 2, Paragraph 3, and Paragraph 1, in that order. If arranged in order of the Jail's official grievance procedure, it would consist of Paragraph 2 and Paragraph 3 and nothing more. And, if arranged in order of the Jail's actual grievance procedure, it would consist of Paragraph 4, Paragraph 2, and Paragraph 3, in that order. But, the procedure, as written, follows no logical order and makes little sense.

**B.      Poor Organization**

The organization of each paragraph only adds to the confusion. By way of example, the Court focuses on the final paragraph, entitled "Note," which, again, states:

> Note: Detainee Grievance Forms can be obtained from any supervisor or correctional officer. The Dress-Out Officer is responsible for briefing the grievance procedure to detainees prior to them being assigned to their respective housing units. A Captains request must be submitted prior to the grievance procedure. If no response is received within 15 calendar days, then the Jail Superintendent needs to be notified.

(Doc. 33-2, p. 11; Global Exhibit 1). This paragraph consists of four sentences. All four sentences focus on different topics. The first describes the form used to file a grievance, which presumably refers to Step 1 and/or Step 2 above. The second sentence identifies who is responsible for instructing detainees how to use the grievance procedure and when, which presumably refers to the overall process. The third sentence describes the actual first step, *i.e.*, submitting a captain's request. This initial step is contained in the second-to-last sentence of the entire procedure and is not underlined, highlighted, or emphasized in any way. The final sentence provides instructions for notifying the Jail Superintendent if no response is received to the captain's request, without any explanation as to whether this instruction refers to an appeal of the captain's request, Step 1 or Step 2, or the Superintendent's Call.

**C.      Omission of Deadlines**

The procedure consistently omits deadlines for action on the part of inmates and jail

9

personnel. For example, the final paragraph states: "A Captains request must be submitted prior to the grievance procedure." (Doc. 33-2, p. 11; Global Exhibit 1). However, it does not indicate when the inmate should submit the captain's request. The next sentence instructs the inmate to contact the jail superintendent "[i]f no response is received within 15 calendar days." Jail personnel and inmates, alike, are left wondering: within 15 calendar days of what? The procedure does not say. It could be within fifteen days of the incident prompting the captain's request, the date the inmate submits the captain's request, the date that jail personnel pick up the captain's request, or something else altogether. The procedure does not set forth a clear timeline.

**D.     Lack of Clarity**

The instructions do not clarify whether inmate action is required sequentially or in parallel. A comparison of the final paragraph and Step 1 illustrates this point. Recall that a captain's request is the first actual step in the process, and an inmate is required to notify the Jail Superintendent if no response is received within 15 days. At the same time, Step 1 states: "A grieving detainee shall within 24 hrs. after he/she learns of circumstances or conditions which prompted the grievance, submit the grievance to the shift supervisor, in writing, informing him/her of the grievance and the particulars concerning it." (Doc. 33-2, p. 11; Global Exhibit 1). It is unclear whether the inmate must file a captain's request and a grievance at the same or nearly-the-same time or wait for a response to the captain's request and then file a grievance. The instructions confuse, rather than clarify, the matter.

**E.     Inconsistent / Confusing Use of Terminology and Form**

The inconsistent use of terms, such as "captain's request," "complaint / request form," "grievance," and "detainee grievance form," only muddy the waters. In the final paragraph of instructions, describing the first actual step in the process, the procedure refers to a "Captains

request" and a detainee grievance form. The superintendent's call refers to a complaint / request, and Steps 1 and 2 refer to a grievance. Whether these terms overlap or have entirely different meanings is not at all clear from the written procedures. Captain Collins testified that in practice, the "complaint/request" form has been used for both the "Captains request" and to initiate the "Superintendent's Call" procedure of last resort. Testimony also confirms that the Jail's forms have changed over time, making use of titles that did not correspond to steps in the process.

F.  **Inconsistent Real World Application**

Captain Collins, McLeod's only witness, repeatedly acknowledged that the Jail's grievance procedure, as written during the relevant time period, is confusing--so confusing, in fact, that inmates were not actually required to follow it. Moreover, the procedure at issue is no longer in effect.[6] Captain Collins testified that it has been re-written to clarify the grievance procure, but he could not recall when the revised procedure took effect and was distributed to detainees.

Despite this testimony, McLeod filed a motion for summary judgment against Combs, arguing that he failed to exhaust his administrative remedies at the Jail before filing suit. Defendants in the three other cases also filed for summary judgment on the same grounds. The consolidated *Pavey* hearing addressed eight summary judgment motions stemming from the same procedure. If defendants did not expect the inmates to comply with the procedure, it is unclear why every single defendant filed for summary judgment on the issue of exhaustion.

G.  **Combs' Attempts to Resolve his Dental Complaints**

It is undisputed that Combs submitted a Captains Request on November 1, 2020, complaining that McLeod provided no treatment for his painful, fractured tooth, and noting he had

---

[6] Collins testified that in May 2021, long after Combs' complaints at issue here, the Jail began to use an electronic "kiosk" system for detainees to lodge complaints. The written policy was revised at an unknown time after May 2021.

been on the waiting list for an extraction for over six months. (Doc. 33-1, p. 26; Doc. 35, p. 7).

It is also undisputed that Combs submitted a Grievance Form on December 8, 2020, which lists November 26, 2020 (the date of Combs' medical visit with another provider) as the "Date of Grievance Occurrence." (Doc. 33-1, p. 15; Doc. 35, p. 10). Combs wrote in that Grievance Form:

> I've been constantly putting in complaint forms about my acessive [sic] tooth pains, I've put in numerous sick calls all to no avail. I've been put on the list to see the doctor/dentist more than once; I've been in you guys['] custody for approximately 17 months, I've been on the list about a year. I'm in constant pain, I've been given the wrong meds which made me light head[ed] and nauseated after taking them all under the impression that it was a Ibuprofen.

(Doc. 33-1, p. 15; Doc. 35, p. 10).

McLeod faults Combs for failing to file a grievance after his November 1 request/complaint against her (Combs insists he did so but Jail officials failed to respond). McLeod further argues that Combs' December 8 grievance was insufficient to exhaust the claim against her because it did not mention her by name. Yet that grievance referenced Combs' ongoing attempts to obtain treatment for his tooth pain over the past year. Notably, the grievance procedure does not define what must be included in a captain's request, complaint / request, or grievance. A grievance must only include "particulars," but this term is undefined. Captain Collins testified that when jail officials respond to detainee complaints/grievances, they do not inform the detainee when their form lacks sufficient particulars or is otherwise flawed.

Combs made reasonable attempts, with sufficient specificity, to use the Jail's grievance procedure to bring his complaints to officials' attention. Given the flaws in the procedure discussed above, this Court will not require Combs to guess who, what, when, or how to grieve his complaints at the Jail. McLeod has not met her burden of establishing Combs' failure to exhaust available remedies.

Although the Seventh Circuit requires strict compliance with the PLRA's exhaustion

requirement. *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006), an inmate is only required to exhaust administrative remedies that are actually available to him. *Ross v. Blake*, 578 U.S. 632, 642 (2016). An inmate "must exhaust available remedies, but need not exhaust unavailable ones." *Id.*; *Reid v Balota*, 962 F.3d 325, 329 (7th Cir. 2020); *Schultz v. Pugh*, 728 F.3d 619, 620 (7th Cir. 2013). The United States Supreme Court has adopted a definition of "available" that means "capable of use for the accomplishment of a purpose" and that which is "accessible or may be obtained." *See Booth v. Churner*, 532 U.S. 731, 737-38 (2001) (internal quotations and citations omitted). In this context, an inmate is required to exhaust "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Ross*, 578 U.S. at 642 (citing *Booth*, 532 U.S. at 738).

Three circumstances generally render a prison's grievance process unavailable because it is not capable of use to obtain relief. *Ross*, 578 U.S. at 643. First, an administrative procedure is unavailable when it operates as a simple dead end, despite what the regulations or guidance materials may state. *Id.* (citing *Booth*, 532 U.S. at 736, 738) ("[W]here the relevant administrative procedure lacks authority to provide relief," the inmate has "nothing to exhaust."). This commonly occurs when an administrative official has apparent authority and refuses to exercise it or when a grievance handbook directs an inmate to submit his grievance to an administrative office that disclaims any capacity to consider the grievance. *Ross*, 578 U.S. at 642. Second, an administrative scheme might be so confusing that it is incapable of use. In other words, a grievance process exists, but if "no ordinary prisoner can make sense of what it demands," that process is "unknowable" and thus unavailable. *Reid v. Balota*, 962 F.3d at 329 (quoting *Ross*, 578 U.S. at 643). Finally, a grievance process is unavailable when prison officials thwart an inmate's efforts to exhaust his administrative remedies through "machination, misrepresentation, or intimidation." *Ross*, 578 U.S.

at 644. The unavailability of a grievance process "lifts the PLRA exhaustion requirement entirely and provides immediate entry into federal court." *Hernandez v. Dart*, 814 F.3d 836, 840 (7th Cir. 2016).

No ordinary person could make sense of the Jail's grievance procedure in effect during the relevant time period. As written, it was unknowable and incapable of use by Combs. The grievance procedure at issue was unavailable to him. Accordingly, the motion for summary judgment shall be denied.

## CONCLUSION

**IT IS ORDERED** that the Motion for Summary Judgment for Failure to Exhaust Administrative Remedies filed by Sheri McLeod (Doc. 32) is **DENIED**.

The matter of exhaustion of administrative remedies now being resolved, the four cases are **NO LONGER CONSOLIDATED** and shall proceed **SEPARATELY**. Further, the stay on merits discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

**IT IS SO ORDERED.**

**DATED:  8/29/2022**

              *s/ J. Phil Gilbert*
              **J. PHIL GILBERT**
              **United States District Judge**